IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
MAY 2000 SESSION

## STATE OF TENNESSEE v. CURTIS R. SPARKS

**Direct Appeal from the Circuit Court for Perry County**
**No. 536   Cornelia Clark, Judge**

**No. M1999-01330-CCA-R3-CD - Filed August 2, 2000**

The defendant, Curtis R. Sparks, was convicted of sale of cocaine over .5 grams. The jury assessed a fine of $2,000. The trial court imposed a Range I sentence of nine years. In this appeal of right, the defendant contends that the sentence is excessive and that the trial court should have granted an alternate, community-based sentence. Because the defendant was clearly untruthful in much of his testimony and demonstrated little indication of rehabilitation, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed.**

GARY R. WADE, P.J., delivered the opinion of the court, in which JOE G. RILEY and NORMA MCGEE OGLE, JJ., joined.

Cynthia M. Fort (on appeal), Nashville, Tennessee, and Carthel L. Smith, Jr., (at trial), Lexington, Tennessee, for the appellant, Curtis R. Sparks.

Paul G. Summers, Attorney General & Reporter, Jennifer L. Bledsoe, Assistant Attorney General, and Jeffrey L. Long, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On November 21, 1996, Twenty-First Judicial District Drug Task Force Agents Joey Kimble and Bill Trusdale worked in conjunction with their informant, Chris Smith, to purchase .6 grams of cocaine from the defendant. In preparation for the controlled buy, the agents provided Smith with five marked $20 bills. Smith, who wore a recording device with a transmitter so that the agents could monitor the transaction, purchased a rock of crack cocaine at the defendant's residence. Smith testified that he had known the defendant for years because the defendant worked at a business Smith's family owned. Smith stated that when he saw Grip Vaughn at the front door of the residence owned by the defendant's mother and father, he asked Vaughn to summon the defendant onto the outside porch. Smith testified that the defendant instructed him "to go down the road and meet him." Smith traveled a short distance to a place near the defendant's residence, where the transaction was

completed. Afterward, Smith returned to the supervising agents and provided them with the illegal drug. Later, the cocaine was determined to weigh .6 grams. At trial, the state played the audiotape of the transaction for the jury. Officers Kimble and Trusdale and informant Smith each testified. Special Agent Glenn Everett, a forensic scientist with the Tennessee Bureau of Investigation Crime Laboratory in Nashville, identified the cocaine and determined its weight.

The defendant testified in his own behalf. While he acknowledged that he had engaged in a conversation with informant Smith on November 21, 1996, he claimed that the meeting was at Andy "Grip" Vaughn's package store and that he directed Smith "to go somewhere else" to buy the cocaine. The defendant described Smith as "jittering and jumping" as if on drugs. He contended that nobody would "mess with Smitty 'cause Smitty stayed up on the hill and got in all this trouble and . . . was a snitch and everything." The defendant claimed that he had been deer hunting when he met Smith. The defendant denied that he was either a cocaine user or a cocaine dealer.

Vaughn, who testified for the defense, recalled that the defendant was at his place of business one day when Smith came by for a few minutes and then left. He was uncertain of the date, however. On cross-examination, he conceded that he also may have seen the defendant and Smith together at the defendant's parents' residence.

At the sentencing hearing, Sheriff Thomas Ward, who had known the defendant for approximately 20 years, testified that he had received numerous complaints that the defendant was selling illegal drugs. Based on these complaints, he had contacted agents with the Twenty-First Judicial District Drug Task Force and asked for assistance.

Angenette Yarbro, another confidential informant working with the Perry County Sheriff's Department, also testified at the sentencing hearing. She stated that she had purchased Soma, which is a controlled substance, and crack cocaine from the defendant. She recalled having purchased five Somas for $10. She remembered having bought crack cocaine from the defendant on several occasions, "probably more [times] than [she] could count." She described the place of her crack cocaine purchases as "on the ridge or up there where his house is." She said that she had purchased as little as $20 worth of drugs at a time from the defendant and as much as $150 worth. Ms. Yarbro stated that at the time she was addicted to crack cocaine. On cross-examination, she acknowledged that the state had agreed to dismiss criminal charges against her in exchange for her testimony. She stated that she had already served 46 days in jail by the time she testified.

At the sentencing hearing, the defendant again denied having ever acquired or sold cocaine. He specifically denied having sold any illegal drugs to informant Smith. He described Ms. Yarbro as "full of it" and claimed he had never sold cocaine to her. The defendant stated that he owned a house valued at between $65,000 to $70,000, a car wash worth approximately $5,000, and unimproved property valued at $10,000. He claimed that he paid approximately $400 per month in child support. Until his incarceration, he had been employed at Johnson Control, where he had worked for approximately 20 years. He lost his job as the result of his incarceration and, of course, has been unable to operate his car wash detail shop. His prior record includes several misdemeanor hunting violations.

At the conclusion of the sentencing hearing, the trial court determined that there were no mitigating factors and that there was one enhancement factor. While observing that the defendant's prior criminal convictions were for "very minor offenses involving hunting violations," the trial court nevertheless concluded that the defendant's prior criminal history warranted an enhanced sentence. The trial court placed special emphasis on the testimony of Ms. Yarbro, which was specifically accredited, that the defendant had sold crack cocaine on numerous occasions in the past and, on at least one occasion, sold Soma pills. The trial court also observed that the defendant testified that he had income from a number of sources other than his employment at Johnson Control and that he had knowingly failed to report that income to the Internal Revenue Service. Thus, the trial court determined that the defendant had a much lengthier criminal history than his actual record would suggest. Based upon a possible range of eight to 12 years, the trial court determined than an enhancement of the sentence to nine years was appropriate.

Having determined the length of the defendant's sentence, the trial court ruled that the defendant was ineligible for probation. While noting that the defendant was eligible for a community corrections sentence, the trial court made the following further findings regarding a possible alternative sentence:

> There isn't proof in the record that Mr. Sparks is a user, and his record of employment and having obtained credit and assets for himself suggest that he, individually, has done well. But the imposition of the sale of drugs into his own community is a very serious offense. . . .
>
> I also . . . have to look at the potential or lack of potential for rehabilitation, and this is a harder and closer case. I've pointed out already that Mr. Sparks has a record of employment and he has a record of having obtained and accumulated assets. He has at least one well-respected and reputable member of the community, Mrs. [Helen Craig] Smith, who has appeared here in his behalf as a character witness, and he does not have a history of [serious] criminal convictions.
>
> * * *
>
> I believe that he has, . . . by his own admission, violated federal laws by knowingly under reporting his income and failing to report income to the I.R.S., and I believe that he has been untruthful on the occasions he has testified in this court, both at trial where the jury found him to be untruthful because his testimony was in direct conflict with the testimony of Mr. Smith, and the jury obviously credited Mr. Smith's testimony and the drug task force officer's testimony and did not accredit Mr. Sparks and . . . he has been untruthful . . . .
>
> [A] person who is untruthful and who refuses to accept responsibility for his actions is deemed to be certainly a less worthy candidate of

consideration for rehabilitation.

The trial court also noted that at the sentencing hearing, the defendant had refused to take responsibility for two of his hunting offenses, claiming that he was covering for someone else. Due to the nature of the crime, the lack of candor on the part of the defendant, and the defendant's prior criminal acts, the trial court denied an alternative sentence and required a nine-year term in the Department of Correction.

In this appeal, the defendant makes two claims. First, he argues that the trial court should have imposed no more than an eight-year sentence. Secondly, he contends that he should have been granted a sentence to community corrections.

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see State v. Jones, 883 S.W.2d 597 (Tenn. 1994). "If the trial court applies inappropriate factors or otherwise fails to follow the 1989 Sentencing Act, the presumption of correctness falls." State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987). The record in this case demonstrates that the trial court made adequate findings of fact.

The purpose of the Community Corrections Act of 1985 was to provide an alternative means of punishment for "selected, nonviolent felony offenders in front-end community based alternatives to incarceration." Tenn. Code Ann. § 40-36-103. The Community Corrections sentence provides a desired degree of flexibility that may be both beneficial to the defendant yet serve legitimate societal aims. State v. Griffith, 787 S.W.2d 340, 342 (Tenn.1990). Even in cases where the defendant meets the minimum requirements of the Community Corrections Act of 1985, the defendant is not necessarily entitled to be sentenced under the Act as a matter of law or right. State v. Taylor, 744 S.W.2d 919 (Tenn. Crim. App.1987). The following offenders are eligible for Community Corrections:

> (1) Persons who, without this option, would be incarcerated in a correctional institution;

> (2) Persons who are convicted of property-related, or drug/alcohol-related felony offenses or other felony offenses not

involving crimes against the person as provided in title 39, chapter 13, parts 1-5;

(3) Persons who are convicted of nonviolent felony offenses;

(4) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;

(5) Persons who do not demonstrate a present or past pattern of behavior indicating violence;

(6) Persons who do not demonstrate a pattern of committing violent offenses; and

Persons who are sentenced to incarceration or on escape at the time of consideration will not be eligible.

Tenn. Code Ann. § 40-36-106(a).

At first blush, the defendant makes a persuasive case for an alternative sentence. Forty years of age, he has no felony record. The report by the Department of Correction indicates that he has only three prior offenses, all of which were hunting violations. In good physical condition, the defendant is divorced and has three children for whom he provides support. A high school graduate, he had been employed by Johnson Control in Linden, Tennessee, from September 1, 1978, until a week before his trial in April of 1999. His wage there was over $10.00 per hour. The defendant reported that he owned a house, a detail shop, and a 1998 Chevrolet truck. His only indebtedness was on his vehicle in the amount of $308.

There was adequate proof, however, to establish that the defendant had a significant prior criminal history. Recently, in State v. Winfield, ____ S.W.3d ____ (Tenn. 2000), No. E1996-00012-SC-R11-CD, 2000 WL 793948 (Tenn., June 20, 2000), our supreme court ruled that prior criminal history can be established by a preponderance of the evidence. That is, even a charge on which a defendant has been acquitted may qualify as an enhancement factor if, at the sentencing hearing, the state is able to prove by the greater weight of the evidence that the defendant committed the crime. Through the testimony of Ms. Yarbro, the state proved by a preponderance of the evidence that, in addition to the hunting-related offenses, the defendant has a prior criminal history involving numerous drug sales.

Moreover, the defendant had several opportunities to take some degree of responsibility for his misdeeds but refused to do so. The proof could have hardly been more overwhelming at trial. There was an audio tape of the transaction and two police monitors. Yet the defendant adamantly denied any participation in the sale of cocaine and rejected altogether the accusations made against him. During the presentence investigation by the Department of Correction, the defendant declined the opportunity to make a statement. At the sentencing hearing, the defendant not only continued

to deny any involvement in the drug transaction but also claimed to be innocent of at least two of his misdemeanor hunting offenses which had taken place eight to ten years ago.

While a defendant has every right to maintain his innocence and should do so in the face of an unwarranted conviction, his claims in this instance are simply incredible. He dismissed informant Smith as a "snitch" and classified Ms. Yarbro as a liar. The record suggests that the defendant has participated in illegal drug sales for some time and has profited by his actions, but, until now, has never been caught. Had the defendant indicated any level of acceptance of responsibility, shown the least bit of remorse, or evinced a modest desire to rehabilitate himself, he may have warranted an alternative sentence. That he did not take responsibility for the offense, despite conclusive proof to the contrary, demonstrates that the trial court acted properly by denying participation in the community corrections program. Untruthful testimony reflects poorly on rehabilitative potential and is relevant in determining appropriate sentencing alternatives. See Tenn. Code Ann. § 40-35-103(5). False claims may be a bar to an alternative sentence. State v. Dowdy, 894 S.W.2d 301 (Tenn. Crim. App. 1994).

Accordingly, the judgment is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE